**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X      **Docket No.:**
JOHN HAMMEL,

                              Plaintiff,                                **COMPLAINT**

         - against –
                                                                       ***PLAINTIFF DEMANDS***
                                                                       ***A TRIAL BY JURY***
NYC  SCHOOL  SUPPORT  SERVICES,  INC.,  and
ANNALISA WILLIAMS, *in her individual and official*
*capacities,*

                              Defendants.
-------------------------------------------------------------------X

         PLAINTIFF JOHN HAMMEL, by his attorneys, PHILLIPS & ASSOCIATES, Attorneys

at Law, PLLC, hereby complains of DEFENDANTS, upon information and belief, as follows:

                              **NATURE OF THE CASE**

1.       PLAINTIFF complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C.

         §§ 12101, *et seq*. ("ADA"); Age Discrimination in Employment Act of 1967 ("ADEA")

         the New York State Human Rights Law §§ 296 *et seq*. ("NYSHRL"); and the New York

         City Human Rights Law / New York City Administrative Code §§ 8-107, *et seq*.

         ("NYCHRL"), and seeks damages to redress the injuries PLAINTIFF has suffered as a

         result of being **discriminated and retaliated against** by DEFENDANTS due to his **age,**

         **disability and/or perceived disability**, and/or his engagement in protected activities.

2.       **This is a perceived disability case.** PLAINTIFF does not suffer from actual disabilities,

         but DEFENDANTS perceive(d) that PLAINTIFF has disabilities and acted according to

         their misguided beliefs. Insofar as PLAINTIFF does suffer from a disability as defined

         under the Statutes herein, PLAINTIFF suffered from a heart condition, which caused him

         to suffer a heart attack and caused his physicians to limit his physical activities for an

         undetermined period of time as described below.

3.      PLAINTIFF was/is employed as a Handyman and/or Janitor for/with DEFENDANT NYC SCHOOL SUPPORT SERVICES, INC., who manages janitorial operations at Public School 369 in Brooklyn, New York. PLAINTIFF has been employed in this public school for over 35 years.

4.      In June 2020, while out on vacation, PLAINTIFF suffered a heart attack. PLAINTIFF was placed on medical leave for a few months for his recovery, but was not diagnosed with disabilities.

5.      In the Fall of 2020, PLAINTIFF obtained a doctor's note indicating that PLAINTIFF could return to work on "full duty" but could not shovel snow and should not lift over 50 pounds of weight.

6.      PLAINTIFF presented the letter from his doctor to DEFENDANT NYC SCHOOL SUPPORT SERVICES, INC. and/or DEFENDANT ANNALISA WILLIAMS. Without engaging in any interactive process whatsoever, DEFENDANT NYC SCHOOL SUPPORT SERVICES, INC. and/or DEFENDANT ANNALISA WILLIAMS immediately rejected PLAINTIFF'S doctor's note and denied PLAINTIFF the ability to return to work unless he was fully cleared to return to work without any restrictions whatsoever.

7.      PLAINTIFF protested this adverse employment action by DEFENDANT NYC SCHOOL SUPPORT SERVICES, INC. and/or DEFENDANT ANNALISA WILLIAMS. PLAINTIFF also began to contact his union, SEIU 32BJ for assistance with this work-related issue.

8.      DEFENDANT NYC SCHOOL SUPPORT SERVICES, INC. intentionally ignored PLAINTIFF'S demands for a grievance and caused PLAINTIFF to lose his ability to file a grievance altogether. PLAINTIFF continued to ask for help but was intentionally ignored

from all sides in an effort to cause PLAINTIFF to lose his 35-year employment – in violation of the Statutes at issue herein and the collective bargaining agreement.

9.     While withholding his pay, accumulated benefits and ability to return to work, DEFENDANTS then told PLAINTIFF that the only option he had was to apply for disability, which he did based on DEFENDANTS' discriminatory conduct and instructions.

10.    PLAINTIFF brings this action charging that DEFENDANTS, collectively and/or individually, wrongfully subjected PLAINTIFF to discrimination on the basis of his **perceived disabilities and age**. Due to PLAINTIFF'S age and seniority on the job, DEFENDANT NYC SCHOOL SUPPORT SERVICES, INC. is attempting to keep PLAINTIFF out of work (without reasonable basis) with the intent to permanently remove PLAINTIFF from his employment altogether.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

11.    Jurisdiction of this Court is proper under 42 U.S.C. §§ 12101, *et seq*., and 28 U.S.C. §§ 1331 and 1343.

12.    The Court has supplemental jurisdiction over the claims that PLAINTIFF brought under State and City laws pursuant to 28 U.S.C. § 1367.

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more DEFENDANTS reside within the Eastern District of New York, or the acts complained of occurred therein.

14.    By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 9, 2021; (b) receiving a Notice of Right to Sue from the EEOC on July 9, 2021 (EEOC Charge No. 520-2021-02576); (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d)

contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, PLAINTIFF has satisfied all of the procedural prerequisites for the commencement of the instant action.

15. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

16. A copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

## PARTIES

17. **PLAINTIFF JOHN HAMMEL ("PLAINTIFF")** is a 59-year-old male. At all times relevant, for over 35 years, PLAINTIFF was employed as a handyman and/or janitor at New York City Public School 369, which is a public elementary school in Brooklyn, NY that focuses on students with developmental disabilities.

18. **DEFENDANT NYC SCHOOL SUPPORT SERVICES, INC. (hereinafter "NYCSSS")** is a Type C not-for-profit corporation organized under the Not-For-Profit Corporation Law of the State of New York (the "State"). DEFENDANT NYCSSS' purpose is to supply support services (such as janitorial support) to the New York City Board of Education by way of contractual agreement. DEFENDANT NYCSSS is a legally separate entity from The City of New York but supplies services solely to the New York City Board of Education and/or New York City Public Schools. DEFENDANT NYCSSS employs more than 15 employees.

19. Either collectively, or individually, Corporate DEFENDANT NYCSSS herein employs well over 15 employees.

20. Upon information and belief, **DEFENDANT ANNALISA WILLIAMS (hereinafter "DEFENDANT WILLIAMS")** is a Billing and Payroll Administrator at/for NYCSSS

Defendants. Though DEFENDANT WILLIAMS publicly reports that she is employed by a company named Temco, DEFENDANT WILLIAMS has an NYCSSS email address (awilliams@nycsss.org) and contact and also functions as a personnel/HR employee or representative at DEFENDANT NYCSSS with regard to its janitorial employees. DEFENDANT WILLIAMS responds to janitorial employee inquiries to HR at NYCSSS and makes HR decisions for the janitors (such as PLAINTIFF).

21.  According to information publicly available, **DEFENDANT WILLIAMS** "*oversees organization's administrative operations for a defined group of NYC Department of Education janitorial employees, servicing 19 schools with approximately 200 employees.*" DEFENDANT WILLIAMS had the ability to affect the terms and conditions of PLAINTIFF'S employment, including but not limited to making determinations related to PLAINTIFF'S request for reasonable accommodations.

22.  Collectively, DEFENDANTS **NYCSSS and WILLIAMS** will be referred to as **"NYCSSS DEFENDANTS."**

## MATERIAL FACTS

23.  At all times relevant, PLAINTIFF served as a handyman and/or janitor at/with New York City Public School, P369K, also known as The Coy L. Cox School.

24.  PLAINTIFF has been employed at this location for over 35 years.

25.  Upon information and belief, in or around the year 2016, The New York City Department of Education entered into an agreement with DEFENDANT NYCSSS wherein NYCSSS would provide janitorial and cleaning support services for the New York City Public School system. Pursuant to this contract, PLAINTIFF became an employee of DEFENDANT NYCSSS, but remained in the same position/title/building.

26.  PLAINTIFF is a dues-paying member of 32BJ and has been a member in good standing

therewith during his entire employment with/at DEFENDANT NYCSSS.

27. As a 35+ year employee of DEFENDANT, PLAINTIFF has valuable benefits and fringes that he accumulated over time, and is vested in, including retirement and pension benefits.

28. At all times, PLAINTIFF performed the functions of his employment in an above-satisfactory manner and was never written-up or disciplined for performance related issues.

29. PLAINTIFF was/is qualified to perform the duties of his employment.

30. For 35 years while employed with DEFENDANTS, PLAINTIFF had no actual disability and never required any accommodations.

31. However, on or about June 15, 2020, PLAINTIFF started his vacation in the regular course. During his vacation, PLAINTIFF suffered a heart attack on June 22, 2020.

32. PLAINTIFF was admitted to the hospital and discharged on or about July 1, 2020.

33. As a result of his heart attack, PLAINTIFF was out of work until into October of 2020.

34. While out of work, on 10/9/2020, PLAINTIFF was contacted by DEFENDANT NYCSSS and told that he was being terminated for allegedly failing to take mandatory COVID-19 training.

35. However, PLAINTIFF took this training earlier on 9/24/2020 and did have proof of same.

36. NYCSSS DEFENDANTS were well aware that PLAINTIFF attended COVID-19 training and held a certificate of completion at that time.

37. Nevertheless, as PLAINTIFF was out on medical leave at the time of this notice, if PLAINTIFF did fail to acquire the certification, PLAINTIFF should have been afforded an accommodation and no effort should have been taken by DEFENDANTS to terminate PLAINTIFF'S employment.

38. PLAINTIFF'S union did file a grievance related to this termination. Nevertheless, during the grievance, PLAINTIFF'S union entered into a clandestine settlement with NYCSSS, despite

PLAINTIFF holding proof of COVID-19 training.

39.   Though PLAINTIFF supplied his union, 32BJ, and his employer DEFENDANT NYCSSS with proof-positive of his attendance at mandatory COVID-19 training earlier that year, DEFENDANT NYCSSS and the union agreed (outside of PLAINTIFF'S presence and without his consent) to convert PLAINTIFF'S termination to a suspension with time served.

40.   Despite his protests and proof, PLAINTIFF'S union representative signed the stipulation of settlement (without PLAINTIFF'S knowledge) and sent it to PLAINTIFF to sign.

41.   This was DEFENDANTS' first wrongful attempt to remove PLAINTIFF from his employment while he was out on medical leave.

42.   NYCSSS had no legal or good faith basis for stopping PLAINTIFF'S pay.

43.   PLAINTIFF did not sign the agreement and did not hear about the issue again. However, for some reason, DEFENDANT NYCSSS stopped PLAINTIFF'S salary payments at this time and PLAINTIFF was not paid after this.

44.   PLAINTIFF continued to contact COLLECTIVE DEFENDANTS about the fact that they stopped his payments. But NYCSSS did not contact PLAINTIFF in response to his numerous requests.

45.   Stopping PLAINTIFF'S payments was a breach of the Collective Bargaining Agreement by NYCSSS.

46.   Stopping PLAINTIFF'S payments violated PLAINTIFF'S rights under the ADA, NYSHRL and NYCHRL – not to mention PLAINTIFF'S collective bargaining rights – because DEFENDANTS had no legal basis to do so.

47.   NYCSSS stopped PLAINTIFF'S payments in retaliation for being on medical leave and in retaliation for refusing to sign the stipulation to accept the suspension.

48.   On 10/23/2020, PLAINTIFF went to see his cardiologist and was provided a letter clearing

him to return to work after his heart attack.

49.  PLAINTIFF'S doctor's note indicated that PLAINTIFF could return to full duty on 10/26/2020 with restrictions, which were that PLAINTIFF could not engage in snow shoveling.

50.  On 10/23/2020, PLAINTIFF emailed the doctor's note to his supervisor (Julio Lock) and sought a return to work.

51.  That same day, at approximately 2:02 p.m., Mr. Lock then sent PLAINTIFF'S doctor's note to "Human Resources at NYCSSS" **(hereinafter "HR")** and sought a response from HR as to whether PLAINTIFF could return to work.

52.  Mr. Lock's inquiry to HR concerning PLAINTIFF'S return to work was received and immediately responded to by DEFENDANT WILLIAMS.

53.  Specifically, at 3:45 p.m. on 10/23/2020, HR representative DEFENDANT ANNALISA WILLIAMS responded to Mr. Lock and indicated that PLAINTIFF could not return to work unless he was fully cleared for duty.

54.  Specifically, in her email, DEFENDANT WILLIAMS wrote: "*[t]he employee cannot return to work with this doctor's note. This doctor's note has restrictions listed. The employee may apply for disability [sic] he has health issues which prevents him from working at full capacity*."

55.  PLAINTIFF was not disabled, did not have a disability and did not believe he qualified for, or required, disability payments or benefits.

56.  As a direct result of DEFENDANTS' callous conduct and instructions to PLAINTIFF to apply for disability, in desperation for himself and his wife, PLAINTIFF was forced to humiliate himself and apply for disability as instructed by NYCSSS.

57.  DEFENDANTS were clear that they would not allow PLAINTIFF to use the benefits he

accumulated over the years, would strip PLAINTIFF of his benefits and fringes and would force PLAINTIFF to go on public assistance and disability.

58.    Clearly, DEFENDANTS <u>believed or perceived</u> that PLAINTIFF had a disability that, "***prevent[ed] him from working at full capacity***" and intended to exclude PLAINTIFF from his employment due to, <u>what NYCSSS perceived as</u>, a disability.

59.    DEFENDANT NYCSSS made this summary determination without engaging in any form of interactive process or cooperative dialogue with PLAINTIFF, or his doctor, to determine whether PLAINTIFF could be accommodated or could perform the duties of his job.

60.    DEFENDANT NYCSSS has a standing policy and practice of refusing to grant reasonable accommodations to its employees (such as PLAINTIFF), who has any disability or medical condition that prevents them from functioning at 100% capacity.

61.    DEFENDANT NYCSSS does not accommodate employees with any health condition or disability – according to DEFENDANTS WILLIAMS' response to Mr. Lock.

62.    However, upon information and belief, DEFENDANT WILLIAMS' stated policy only applied to PLAINTIFF. Similarly situated younger employees are granted reasonable accommodations, unlike PLAINTIFF.

63.    Granting PLAINTIFF a reasonable accommodation would not have conflicted with the policies of NYCSSS and/or any standing collective bargaining agreements.

64.    There was nothing stopping or preventing DEFENDANT NYCSSS from providing PLAINTIFF with a reasonable accommodation or preventing NYCSSS from engaging in an interactive process to allow PLAINTIFF to return to work.

65.    DEFENDANT NYCSSS made no assessment as to whether accommodating PLAINTIFF would create any undue hardship on NYCSSS or the school in which PLAINTIFF was assigned.

66.    Granting PLAINTIFF a reasonable accommodation (no snow shoveling) would not have created any undue hardship on NYCSSS.

67.    DEFENDANT NYCSSS did not seek permission to speak to PLAINTIFF'S doctors to find out how/if PLAINTIFF could be accommodated.

68.    DEFENDANT NYCSSS made no attempt, good faith or otherwise, to accommodate PLAINTIFF in any way.

69.    As snowfall does not occur all year long, and only at some points during the winter, PLAINTIFF could have worked with a reasonable accommodation that would not have adversely affected NYCSSS' operations, but he was prevented from doing so by NYCSSS DEFENDANTS.

70.    As there are many other janitors to assist PLAINTIFF, PLAINTIFF could have been afforded assistance to lift objects over 50 pounds and other reasonable arrangements could have been made to accommodate PLAINTIFF in the event of a snow event that required shoveling.

71.    Indeed, janitors at NYCSSS have a (contractually mandated) lifting limit of 55 lbs. So, accommodating PLAINTIFF in the manner suggested by his doctor (*i.e* no lifting over 50 lbs) would have caused no difficulty at all to NYCSSS.

72.    The only reason that PLAINTIFF was treated in this manner is because of his perceived disability and his age – in that – NYCSSS DEFENDANTS wanted to keep PLAINTIFF out of work for a prolonged period of time to (wrongfully) contractually force his termination.

73.    DEFENDANTS did not treat their younger similarly situated janitors in this manner.

74.    After being informed by his supervisor that he could not return to work unless fully cleared, confused, PLAINTIFF followed up by making a request for a reasonable accommodation directly with HR.

75.    Specifically, On November 19, 2020, at 1:16 p.m., PLAINTIFF wrote to NYCSSS' Support

Services and/or HR stating:

> **"My name is John Hammel. I am employed at K369 Brooklyn for the last 35 years as a handy man. In June, I suffered a heart attack and have been out of work since. On October 23,2020 I was given clearance from my doctor to return to work with a restriction of not being able to shovel snow. I've since been told I cannot return to work because of this restriction. I am still able to perform every other aspect of my job as a handyman. I am asking for you to make an accommodation for me under the American Disability Act. . ."**

76. Immediately, the same day, PLAINTIFF received a response from DEFENDANT WILLIAMS, stating: "*you cannot return to work <u>with any restrictions</u>, as we previously discussed <u>you can apply for disability</u>. <u>We cannot allow you to work with any kind of restrictions</u>. You can follow up with your union on how to proceed with this situation*."

77. Then, on November 20, 2020, Plaintiff received a response from NYCSSS' Support Team stating: "**Status: Closed**."

78. DEFENDANT NYCSSS closed PLAINTIFF'S reasonable accommodation request without telling him what the determination was. DEFENDANT did not provide PLAINTIFF with any details other than his application for reasonable accommodations was "**closed**."

79. DEFENDANTS callously left it up to PLAINTIFF to determine what "**closed**" meant.

80. As per the requirements of the <u>New York City Human Rights Law</u>, DEFENDANT NYCSSS failed to afford PLAINTIFF a cooperative dialogue or an interactive process.

81. Specifically, as per <u>NYCHRL</u> § 8-107(28)(d), upon reaching a final determination <u>at the conclusion of a cooperative dialogue</u> NYCSSS DEFENDANTS were obligated to provide PLAINTIFF with a written final determination identifying any accommodation granted or denied. <u>This was not done for PLAINTIFF</u>.

82. Also, as per <u>NYCHRL</u> § 8-107(28)(e), the determination that no reasonable accommodation would enable PLAINTIFF to satisfy the essential requisites of a job or enjoy the right or rights in question may only be made after the parties have engaged, or NYCSSS has attempted to

engage, in a cooperative dialogue. <u>This was not done for PLAINTIFF</u>.

83.  NYCSSS DEFENDANTS were, or should have been, aware of their obligations listed above and intentionally refused to obey the law.

84.  Contrary to the requirements of the <u>New York City Human Rights Law</u>, DEFENDANT NYCSSS <u>did not</u> have a policy informing employees how to request accommodations.

85.  Contrary to the requirements of the <u>New York City Human Rights Law</u>, DEFENDANT NYCSSS <u>did not</u> respond to PLAINTIFF'S request promptly in light of the urgency and reasonableness of the request.

86.  Contrary to the requirements of the <u>New York City Human Rights Law</u>, DEFENDANT NYCSSS sought to obstruct the cooperative dialogue and deter PLAINTIFF from requesting the accommodation.

87.  On the same day, November 20, 2020, at 11:35 a.m., PLAINTIFF immediately followed up with DEFENDANTS' Support Services department and wrote: "*there are no details supplied in this email regarding my request for a reasonable accommodation with the American Disability Act. Please contact me John Hammel*."

88.  On the same day, November 20, 2020, PLAINTIFF received a response from HR (upon information and belief, from DEFENDANT WILLIAMS) stating: "***there are no details to supply you with. <u>Its company policy</u>. The job requires a lot of physical activities, there is no light duty. <u>You can only return with no restrictions</u>. Please follow up with your union. I don't have any more advice to give you***."

89.  As such, DEFENDANTS **confirmed and admitted** that they have a standing "***<u>company policy</u>***" and practice against granting any kind of reasonable accommodation to their employees.

90.  As per their own admissions, NYCSSS DEFENDANTS has a standing "**policy**" to issue

blanket denials to its employees seeking reasonable accommodations (such as PLAINTIFF).

91.     In the alternative, NYCSSS implemented a policy for PLAINTIFF only due to his age in an attempt to permanently remove PLAINTIFF from his employment.

92.     Younger, similarly-situated janitors faced with a need for reasonable accommodations are not treated in the same manner as PLAINTIFF.

93.     PLAINTIFF did not ask for "*light duty*," and only sought an accommodation to not have to shovel snow and/or lift 50 lbs.

94.     Snow shoveling and lifting 50 lbs were not typical everyday duties for PLAINTIFF during the 35 years he was employed with DEFENDANTS. For PLAINTIFF, it was seldom that PLAINTIFF shoveled snow or lifted objects over 50 lbs.

95.     PLAINTIFF would have been able to perform the regular and customary everyday duties of his job with an accommodation and did not require a "*light duty*" situation.

96.     If NYCSSS DEFENDANTS engaged in an interactive/cooperative process with PLAINTIFF, NYCSSS would have known that PLAINTIFF could be accommodated.

97.     In the meantime, NYCSSS callously continued to not pay PLAINTIFF, while telling PLAINTIFF to apply for disability.

98.     Though PLAINTIFF had at least 149 hours of sick time accumulated and 528 hours of vacation time in the bank, to which he was entitled, DEFENDANT NYCSSS simply stopped paying PLAINTIFF.

99.     At all times, NYCSSS DEFENDANTS knew that their actions, in refusing to return PLAINTIFF to work, and cutting PLAINTIFF off from his vacation and/or sick day pay, was causing great financial detriment to PLAINTIFF and his family.

100.    Indeed, PLAINTIFF'S wife suffers from disabilities and PLAINTIFF is his wife's sole caretaker, sole provider of financial support and health insurance.

101.    PLAINTIFF and his wife desperately relied on PLAINTIFF'S income and employment
        benefits.

102.    By cutting PLAINTIFF off of his health insurance and restricting PLAINTIFF'S pay,
        DEFENDANTS caused insurmountable harm to PLAINTIFF and his wife.

103.    PLAINTIFF'S wife could not continue with her medical care and PLAINTIFF was also
        prevented therefrom.

104.    PLAINTIFF and his wife could not feed themselves and had to apply for public assistance as
        a result.

105.    PLAINTIFF and his wife were desperate for money after PLAINTIFF stopped getting paid
        for a prolonged ongoing period and had to borrow money to make ends meet.

106.    PLAINTIFF continued to seek answers from NYCSSS DEFENDANTS about his pay (or lack
        thereof).

107.    PLAINTIFF continued to write to DEFENDANTS to place them on notice of the mounting
        and ongoing damages and injuries they were causing PLAINTIFF and his family.

108.    Meanwhile, from as early as the first week in November 2020 (approximately 11/4/2020),
        PLAINTIFF continued to attempt to notify and speak to his union (32BJ) for assistance with
        the accommodation and lack of pay issues.

109.    On or about 11/4/2020, PLAINTIFF made a written complaint to the 32BJ and waited for a
        response, while trying to address his issues directly with NYCSSS in the meantime.

110.    On November 13, 2020, PLAINTIFF contacted the union by email, stating: *"Good morning
        . . . following up on my complaint it has been a week since this has been filed and I have yet
        to be contacted by anyone. It has been 6 weeks since I received any pay for weeks ending
        September 17, 2020. This needs to be resolved. I need help. . ."*

111.    In response, on the same day 11/13/2020, the union representative that responded to the

complaint, Mercedes Ramirez of SEIU 32BJ, cryptically wrote to PLAINTIFF: "***Need to contact Rep for the complaint.***"

112. To this cryptic and cavalier response from SEIU 32BJ, Plaintiff wrote: "*he has not returned my calls*." This is because no one from the union responded to PLAINTIFF'S multiple calls and complaints.

113. Indeed, if PLAINTIFF did not continually follow up with his complaints, he would not have gotten the response to "***contact Rep for the complaint.***" PLAINTIFF would have been left with silence from the union.

114. After numerous calls were unanswered by SEIU 32BJ, on or about January 8, 2021, PLAINTIFF contacted COLLECTIVE DEFENDANTS in writing and specifically asked DEFENDANTS for a grievance on his behalf.

115. None of the DEFENDANTS (NYCSSS) responded to this (1/8/2021) written request by PLAINTIFF.

116. Though all Parties were made aware and had constructive and actual notice of PLAINTIFF'S desire to grieve their employment actions, DEFENDANTS simply ignored PLAINTIFF once again.

117. At all times, DEFENDANT NYCSSS was aware that PLAINTIFF was challenging their employment decisions as well.

118. After not hearing from SEIU 32BJ despite ongoing attempts, PLAINTIFF tried (once again) to protect his own rights without the union by sending both the SEIU 32BJ and DEFENDANT NYCSSS a joint letter complaint wherein he reiterated his desire to file a formal grievance.

119. SPECIFICALLY, by email, dated 1/21/2021, PLAINTIFF wrote SEIU 32BJ and NYCSSS DEFENDANTS a "**request for a grievance of refusal to allow [Plaintiff] to return to work**" and "**request for a grievance of denial of [Plaintiff's] reasonable accommodation**

**request**.”

120.   In his letter complaint, PLAINTIFF outlined his employment circumstances, stated his concerns, and stated, in no uncertain terms, that he wanted “**to file a grievance**” regarding his situation immediately.

121.   In addition, PLAINTIFF asked, “**if this matter is not grievable, I ask that the Union or NYCSSS tell me as soon as possible so I can explore my options**.”

122.   PLAINTIFF concluded his letter by stating, “**I ask for immediate response to this request because I have been in limbo for many weeks**.”

123.   NYCSSS DEFENDANTS received PLAINTIFF’S request and had <u>actual and constructive notice</u> of PLAINTIFF’S desire and intent to challenge NYCSSS’ employment actions.

124.    NYCSSS, as usual, simply ignored PLAINTIFF once again.

125.    As of the date of this Complaint, DEFENDANT NYCSSS delayed in hearing PLAINTIFF’S grievance, prolonged PLAINTIFF’S time without pay and have caused irreparable damage to PLAINTIFF and his wife.

126.   NYCSSS is well-aware that their conduct is placing PLAINTIFF in financial and emotional detriment as his 35-year employment and his benefits are at risk.

127.   Upon information and belief, NYCSSS DEFENDANTS’ intended to have PLAINTIFF removed from his 35-year employment and stripped of his hard-earned benefits.

128.   Specifically, as per the Collective Bargaining Agreement at Article 9.5, “**in the event an employee’s disability exceeds six (6) months, or one (1) year if the employees disability leave has been extended, <u>the employer shall have the right to permanently replace such employee</u>**.”

129.   So, either NYCSSS DEFENDANTS have absolutely no concern for their veteran employee PLAINTIFF, or NYCSSS DEFENDANTS, who are all well-aware of Article 9.5 of the CBA,

intend to cause PLAINTIFF to lose his employment altogether.

130. NYCSSS DEFENDANTS are aware that PLAINTIFF could not be cleared by his doctor to shovel snow or lift over 50 lbs because he recently suffered a heart attack.

131. NYCSSS DEFENDANTS know that PLAINTIFF would probably not (reasonably) be able to obtain a doctor's note that fully clears him to shovel snow or lift over 50 lbs within a year.

132. NYCSSS DEFENDANTS know that PLAINTIFF can adequately perform the duties of his employment with a reasonable accommodation, but refuse to oblige PLAINTIFF.

133. As such, NYCSSS DEFENDANTS are simply waiting-out the 6 months to one year timeframe so that PLAINTIFF can be "**permanently replaced**" as per the CBA.

134. If it is not NYCSSS DEFENDANTS' intent to permanently replace PLAINTIFF, then in the alternative, NYCSSS DEFENDANTS are certainly attempting to prevent PLAINTIFF from grieving his employment status. Either option is being undertaken by NYCSSS DEFENDANTS in extremely bad faith.

135. The Employer DEFENDANT NYCSSS breached its contractual and legal obligations to PLAINTIFF.

136. And DEFENDANT NYCSSS breached its duty to PLAINTIFF by not responding to any of PLAINTIFF'S complaints, pleas for help, or requests to file grievances.

**137. COLLECTIVE DEFENDANTS' conduct is a <u>continuing violation</u> of PLAINTIFF'S rights.**

138. As a result of NYCSSS DEFENDANTS' actions, PLAINTIFF is being humiliated, degraded, victimized, embarrassed and caused severe financial and emotional distress.

139. As a result of the acts and conduct complained of herein, PLAINTIFF is suffering a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails, and PLAINTIFF has also suffered future

pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

140.  NYCSSS DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, punitive damages as against NYCSSS DEFENDANTS are appropriate.

### AS A FIRST CAUSE OF ACTION FOR *DISCRIMINATION/ RETALIATION* UNDER THE AMERICANS WITH DISABILITIES ACT
(*Against Corporate Defendant NYCSSS*)

141.  PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

142.  Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

143.  CORPORATE DEFENDANT is PLAINTIFF'S employer.

144.  Following PLAINTIFF'S heart attack in June 2020, CORPORATE DEFENDANT perceived that PLAINTIFF has and/or suffers from disabilities.

145.  PLAINTIFF presented a doctor's note to DEFENDANTS and sought a reasonable accommodation.

146.  PLAINTIFF'S doctors' notes were immediately rejected and his request(s) for accommodation were summarily denied, without reasonable basis.

147.  CORPORATE DEFENDANT refused to accommodate PLAINTIFF and declined to engage in the interactive process.

148.   CORPORATE DEFENDANT was aware of its obligation to engage in an interactive process and to assess whether it could accommodate PLAINTIFF.

149.   DEFENDANTS knew or should have known of their obligations to accommodate PLAINTIFF under the ADA.

150.   DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

151.   CORPORATE DEFENDANT, in absolute bad faith, refused to afford PLAINTIFF a grievance with regard to its decision to deny PLAINTIFF his employment, stop his pay and their other adverse employment actions against PLAINTIFF.

152.   DEFENDANTS engaged in an unlawful discriminatory practice by summarily suspending and terminating PLAINTIFF because of his perceived disabilities.

153.   PLAINTIFF made numerous complaints about the violation of his rights under the ADA and DEFENDANTS refused to accommodate PLAINTIFF in accordance with the law(s).

154.   As a result of his engagement in protected activity, DEFENDANTS continue to ignore and deny PLAINTIFF his rights, while keeping him in the dark about his employment, in an ongoing effort to humiliate PLAINTIFF (and his wife) for engaging in protected activity.

155.   As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails.   PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

156.   As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

**AS A SECOND CAUSE OF ACTION FOR *DISCRIMINATION*
UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT of 1967**
(***Against Corporate Defendant NYCSSS***)

157.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

158.    This claim is authorized and instituted pursuant to the provisions of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et. seq., ("ADEA") for relief based upon the unlawful employment practices of the above-named corporate DEFENDANT.

159.    Plaintiff complains of Defendant's violation of the ADEA, as amended by the Older Workers Benefit Protection Act ("OWBPA"), which prohibits discrimination in employment with regard to employee benefits, in whole or in part, based on an employee's age.

160.    PLAINTIFF is 59 years old and has been employed with CORPORATE DEFENDANTS for over 35 years.

161.    DEFENDANTS are aware that PLAINTIFF has 35+ years of experience and seniority on the job.

162.    DEFENDANTS are seeking to have PLAINTIFF "permanently removed" from his employment due to his age.

163.    Upon information and belief, similarly situated younger employees that seek reasonable accommodations and/or cannot work at full capacity are granted reasonable accommodations.

164.    DEFENDANTS do not assert a blanket policy of refusing to employ or reinstate younger individuals, who present doctors' notes or inform DEFENDANT about disabilities.

165.    CORPORATE DEFENDANTS do not have a blanket denial policy toward its younger employees that seek reasonable accommodations. Said younger individuals are afforded an

interactive process and opportunities to resume employment.

166.    Due to Plaintiff's heart attack, DEFENDANTS are intentionally keeping PLAINTIFF out of work in order to "remove" him from employment under the CBA, for remaining out on sick leave for over 6 months to a year.

167.    DEFENDANTS are aware that PLAINTIFF would most likely not be able to obtain a note from his doctor that 100% clears him for duty. DEFENDANTS seek to capitalize on this by summarily denying PLAINTIFF reinstatement to force PLAINTIFF'S employment to be taken away.

168.    CORPORATE DEFENDANTS' ill-intended purpose is to strip PLAINTIFF of his earned benefits, retirement, collective bargaining rights, seniority, and other fringes, due to his age and seniority on the job.

169.    DEFENDANTS have no good faith basis for their collective conduct against PLAINTIFF.

170.    CORPORATE DEFENDANTS engaged in unlawful employment practices against PLAINTIFF, prohibited by the ADEA, as amended by the OWBPA, by discriminating against Plaintiff because of his age and not affording him the statutorily mandated information so that he could reasonably become aware of such unlawful discrimination.

171.    Further, Defendants' discrimination of Plaintiff on account of age constitutes a willful violation of 29 U.S.C. § 623 and, as such, Plaintiff is entitled to recover double damages.

172.    As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

**AS A THIRD CAUSE OF ACTION FOR *DISCRIMINATION / RETALIATION*
UNDER THE NEW YORK STATE EXECUTIVE LAW**
**(*Against All Defendants*)**

173.    PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

174.    The New York State Executive Law § 296(1)(a) provides in pertinent part: "It shall be an

unlawful discriminatory practice: For an employer . . . because of an individual's . . . age . . . disability . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

175.   COLLECTIVE DEFENDANTS violated this section as set forth herein.

176.   CORPORATE DEFENDANT NYCSSS is PLAINTIFF'S employer.

177.   Following PLAINTIFF'S heart attack in June 2020, CORPORATE DEFENDANT perceived that PLAINTIFF has and/or suffers from disabilities.

178.   PLAINTIFF presented a doctor's note to DEFENDANTS and sought a reasonable accommodation.

179.   PLAINTIFF'S doctors' notes were immediately rejected and his request(s) for accommodations were summarily denied, without reasonable basis.

180.   CORPORATE DEFENDANT refused to accommodate PLAINTIFF and declined to engage in the interactive process.

181.   CORPORATE DEFENDANT was aware of its obligations to engage in an interactive process and to assess whether it could accommodate PLAINTIFF.

182.   DEFENDANTS knew or should have known of their obligations to accommodate PLAINTIFF under the ADA.

183.   DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

184.   CORPORATE DEFENDANT, in absolute bad faith, refused to afford PLAINTIFF a grievance with regard to its decision to deny PLAINTIFF his employment, stop his pay and their other adverse employment actions against PLAINTIFF.

185.   PLAINTIFF made numerous complaints about the violation of his rights under the ADA and DEFENDANTS' refusal to accommodate PLAINTIFF in accordance with the law(s).

186.   As a result of his engagement in protected activity, DEFENDANTS continue to ignore and deny PLAINTIFF his rights, while keeping him in the dark about his employment, in an ongoing effort to humiliate PLAINTIFF (and his wife) for engaging in protected activity.

187.   DEFENDANTS engaged in an unlawful discriminatory practice by summarily suspending and constructively terminating PLAINTIFF because of his perceived disabilities.

188.   As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails.   PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  PLAINTIFF has further experienced severe emotional and physical distress.

189.   As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

### AS A FOURTH CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* UNDER THE NEW YORK STATE EXECUTIVE LAW (*Individual Liability against DEFENDANT WILLIAMS*)

190.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint.

191.   New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to **aid, abet,** incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

192.   INDIVIDUAL DEFENDANT WILLIAMS violated the section cited herein as set forth and was directly involved in the discriminatory and retaliatory actions about which PLAINTIFF complains herein.

193.   DEFENDANT WILLIAMS utilized her powers, authority, status, and position to subject PLAINTIFF to the wrongful treatment outlined in this Complaint and to assist her

employer NYCSSS in unlawful discriminatory practices against PLAINTIFF.

194.   But for DEFENDANT WILLIAMS' position, DEFENDANT would not have been able or authorized to assist DEFENDANTS NYCSSS in continuing the discriminatory campaign against PLAINTIFF.

195.   DEFENDANT WILLIAMS, acting pursuant to her authority, ignored DEFENDANT NYCSSS' own policies, procedures, and rules regarding discriminatory behavior in the workplace.

196.   At all times, DEFENDANT WILLIAMS was aware of her obligation to stop, prevent, investigate, and correct discriminatory practices against PLAINTIFF.

197.   DEFENDANT WILLIAMS is individually liable for aiding and abetting the discriminatory actions of the employer, DEFENDANT NYCSSS.

198.   DEFENDANT WILLIAMS had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

199.   As a result of DEFENDANT WILLIAMS' discriminatory treatment of PLAINTIFF, he is suffering severe emotional distress.

200.   PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of his rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. PLAINTIFF has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, physical conditions, and other non-pecuniary losses.

201.   DEFENDANT WILLIAMS' action(s) are malicious, willful, outrageous, and conducted with full knowledge of the law.

202.   PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

## AS A FIFTH CAUSE OF ACTION FOR *DISCRIMINATION / RETALIATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE *(Against CORPORATE DEFENDANT NYCSSS)*

203.   PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

204.   The <u>Administrative Code of the City of New York</u> § 8-107(1) provides that

It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

205.   COLLECTIVE DEFENDANTS violated this section as set forth herein.

206.   CORPORATE DEFENDANTS are PLAINTIFF'S employers.

207.   Following PLAINTIFF'S heart attack in June 2020, CORPORATE DEFENDANTS perceived that PLAINTIFF has and/or suffers from disabilities.

208.   PLAINTIFF presented a doctor's note to DEFENDANTS and sought a reasonable accommodation.

209.   PLAINTIFF'S doctors' notes were immediately rejected and his request(s) for accommodation were summarily denied, without reasonable basis.

210.   CORPORATE DEFENDANT refused to accommodate PLAINTIFF and declined to engage in the interactive process.

211.   CORPORATE DEFENDANT was aware of its obligations to engage in an interactive process and to assess whether it could accommodate PLAINTIFF.

212.   DEFENDANTS knew or should have known of their obligations to accommodate PLAINTIFF under the ADA.

213.   DEFENDANTS did not provide PLAINTIFF with written documentation of the interactive

process as required by <u>NYCHRL</u> § 8-107(28)[d] or [e].

214. DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

215. CORPORATE DEFENDANTS, in absolute bad faith, refused to afford PLAINTIFF a grievance with regard to their decision to deny PLAINTIFF his employment, stop his pay and their other adverse employment actions against PLAINTIFF.

216. DEFENDANTS engaged in an unlawful discriminatory practice by summarily suspending and terminating PLAINTIFF because of his perceived disabilities.

217. PLAINTIFF made numerous complaints about the violation of his rights under the ADA and DEFENDANTS' refusal to accommodate PLAINTIFF in accordance with the law(s).

218. As a result of his engagement in protected activity, DEFENDANTS continue to ignore and deny PLAINTIFF his rights, while keeping him in the dark about his employment, in an ongoing effort to humiliate PLAINTIFF (and his wife) for engaging in protected activity.

219. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails. PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

220. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

**AS A SIXTH CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* <u>UNDER THE NEW YORK CITY ADMINISTRATIVE CODE</u> *(Aider and Abettor Liability against DEFENDANT WILLIAMS*)**

221. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

222.    The <u>New York City Administrative Code</u> § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

223.    DEFENDANT WILLIAMS engaged in an unlawful discriminatory practice in violation of <u>New York City Administrative Code</u> § 8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct.

224.    INDIVIDUAL DEFENDANT WILLIAMS violated the section cited herein as set forth and was directly involved in the discriminatory actions about which PLAINTIFF complains herein.

225.    DEFENDANT WILLIAMS utilized her powers, authority, status, and position to subject PLAINTIFF to the wrongful treatment outlined in this Complaint and to assist her employer NYCSSS in unlawful discriminatory practices against PLAINTIFF.

226.    But for DEFENDANT WILLIAMS' position at NYCSSS, she would not have been able or authorized to assist DEFENDANTS NYCSSS in continuing the discriminatory and campaign against PLAINTIFF.

227.    DEFENDANT WILLIAMS, acting pursuant to her authority, ignored DEFENDANT NYCSSS' own policies, procedures, and rules regarding discriminatory behavior in the workplace.

228.    At all times, DEFENDANT WILLIAMS was aware of her obligation to stop, prevent, investigate, and correct discriminatory practices against PLAINTIFF.

229.    DEFENDANT WILLIAMS is individually liable for aiding and abetting the discriminatory and retaliatory actions of the employer, DEFENDANT NYCSSS.

230.    DEFENDANT WILLIAMS had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

231. As a result of DEFENDANT WILLIAMS' discriminatory treatment of PLAINTIFF, he is suffering severe emotional distress.

232. PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of his rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. PLAINTIFF has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, physical conditions, and other non-pecuniary losses.

233. DEFENDANT WILLIAMS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

234. PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

## JURY DEMAND

235. PLAINTIFF demands a jury trial.

**WHEREFORE**, PLAINTIFF respectfully requests a judgment against DEFENDANTS:

A. Declaring that NYCSSS DEFENDANTS engaged in unlawful employment practices prohibited by the Americans with Disabilities Act, Age Discrimination in Employment Act of 1967 (ADEA), New York City Administrative Code, and New York State Human Rights Law in that NYCSSS DEFENDANTS discriminated against PLAINTIFF on the basis of his perceived disability, disability and/or age;

B. Awarding damages to PLAINTIFF for all lost wages and benefits resulting from NYCSSS DEFENDANTS' unlawful discrimination and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C. Restoring PLAINTIFF to his employment along with his benefits and rights - including restoring PLAINTIFF'S backpay, lost benefits and otherwise restoring him to a position

he had prior to the discriminatory conduct alleged herein;

D.      Awarding PLAINTIFF compensatory damages for mental, emotional, and physical injury, distress, pain and suffering, and injury to his reputation in an amount to be proven;

E.      Awarding PLAINTIFF punitive damages;

F.      Awarding PLAINTIFF attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G.      Awarding PLAINTIFF such other and further relief as the Court may deem equitable, just, and proper to remedy the NYCSSS DEFENDANTS' unlawful employment practices.

Dated: New York, New York
August 24, 2021

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC.**
*/S/*

By: _____

Gregory Calliste, Jr., Esq.
Yusha D. Hiraman, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
T: (212) 248-7431
F: (212) 901 - 2107
gcalliste@tpglaws.com
yhiraman@tpglaws.com